IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIG INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PRIVILEGE CARE MARKETING,<br>INC., CHRISTOPHER ASHIOTIS,<br>JAMES DOYLE, DONALD SMITH,<br>SUSAN MESSNER, MICHAEL<br>DIVECE, SCOTT RUTHERFORD,<br><br>　　　　Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil Action No. 03-03747 (JBS)<br><br>**OPINION** |

APPEARANCES:

Steven Jay Polansky
Marshall, Dennehey, Warner, Coleman & Goggin, PC
Woodland Falls Corporate Park
200 Lake Dr. East
Suite 300
Cherry Hill, NJ 08002
　　　Attorney for Plaintiff

James Doyle
141 Ganttown Rd., Suite E2
Turnersville, NJ 08012
　　　Defendant Pro Se

Privilege Care Marketing, Inc.
141 Ganttown Rd., Suite E2
Turnersville, NJ 08012

**SIMANDLE**, District Judge:

This matter comes before the Court on the unopposed motion for summary judgment by Plaintiff TIG against all Defendants under F. R. Civ. P. 56.  For reasons discussed herein the motion for summary judgment will be granted.

## BACKGROUND

Plaintiff, TIG Insurance Company ("TIG"), is a California corporation with its principal place of business in Irving, Texas and is in the business of selling professional liability insurance coverage. (Compl. at ¶ 4).  Defendant Privilege Care Marketing, Inc. ("PCM"), is a New Jersey corporation, with its principal place of business in New Jersey and is in the business of promoting the sale of employee benefit plans to small employers. (Id. at 5, 15).  PCM was formed on January 11, 2002 by Defendants James Doyle, Christopher Ashiotis, Donald Smith, Susan Messner, Michael DiVece and Scott Rutherford. (Plaintiff's Motion at ¶ 3).  On February 25, 2002, PCM submitted an application for coverage with the Plaintiff.  Doyle, the President of PCM, who signed the application on behalf of PCM, answered the following questions in the Application in the negative:

> 21. Does any person to be insured have knowledge or information of any act, error, or omission which might reasonably be expected to give rise to a claim against him/her?
> 22. After inquiry, have any claims have been made against any proposed insured(s) during the past five (5) years?

(Plaintiff's Motion, Ex. H).

In February 2002, TIG issued an insurance policy to PCM effective February 6, 2002, to February 6, 2003, policy number MPL 39244585 (Id. at ¶ 1).

2

PCM sought coverage under the TIG policy for several claims arising out of PCM issuing health insurance coverage to different individuals.[1]  TIG however, argues that the insurance policy should be rescinded because in the Application, PCM made material misrepresentations by failing to disclose the cease and desist order the Oklahoma Insurance Commissioner issued against PCM and Smith on January 30, 2002.  The cease and desist order prohibited PCM and Smith from doing business in Oklahoma. (Plaintiff's Motion, Ex. J).

TIG brought this complaint for rescission against PCM, James Doyle, Christopher Ashiotis, Donald Smith, Susan Messner, Michael DiVece and Scott Rutherford.  On February 25, 2004 the Clerk of the Court entered default as to Christopher Ashiotis, Donald Smith, Susan Messner, Michael DiVece and Scott Rutherford, for failure to plead or otherwise defend.  On September 28, 2004 Plaintiff TIG made this motion for summary judgment as to all

---

[1] So far, there are six lawsuits or claims against PCM: (1) Frost v. Paula Garst d/b/a/Texas Insurance Specialist and Privilege Care, Inc., Case No. 2:02-CV-214-J, N. D. Tex.; (2) Jeff & Carol Whitcomb ("Whitcomb claim") (3) Thomas A. Dillon, Independent Fiduciary of Employers Mutual Plans v. Graf, et al., Case No. CV-N-03-019-HDM_VPC. D. Nev.; (4) James Cadenhead (the "Cadenhead claim"); (5) Gardenhire v. Paula Garst d/b/a/Texas Insurance Specialist and Privilege Care, Inc., Case No. 03-06-06094, 166th Judicial District, Lynn County, Texas; (6) Muirhead Trucking, Inc., v. Privilege Care Marketing Group, Inc., No. 03A-233, 173rd Judicial District, Henderson County, Texas. (Plaintiff's Motion, Exhibits B-G).  They were all filed after the TIG policy became effective.

Defendants[2] for the declaratory relief and rescission sought in the Complaint.  This Court has jurisdiction under 28 U.S.C. § 1332 and will apply New Jersey law to the issues raised by this policy of insurance issued to a New Jersey insured.

## DISCUSSION

A. Summary Judgment Standard

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it might affect the outcome of the suit under the applicable rule of law.  Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving

---

[2] The summary judgment motion seeks relief against all seven named Defendants.  All Defendants have been duly served with the summons and complaint and default was entered as to five (Ashiotis, DiVece, Messner, Rutherford and Smith), while the other two Defendants (Doyle and Privilege Care Marketing, Inc. (PCM)) have failed to answer or otherwise plead to the complaint and are therefore also in default under Rule 55(a), Fed. R. Civ. P.  The present motion does not seek default judgment under Rule 55(b), Fed. R. Civ. P., but instead seeks summary judgment under Rule 56, Fed. R. Civ. P.  Plaintiff has served these motion papers upon all Defendants. (see Certificate of Service at Docket Item 22-1, page 2.)  In response to the motion, no party has either sought to be relieved from the entry of default or filed any opposition.

party by extending any reasonable favorable inference to that
party; "the nonmoving party's evidence 'is to be believed, and
all justifiable inferences are to be drawn in his favor.'"  Hunt
v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby,
477 U.S. at 255).  The threshold inquiry is whether there are
"any genuine factual issues that properly can be resolved only by
a finder of fact because they may reasonably be resolved in favor
of either party."  Liberty Lobby, 477 U.S. at 250.

　　　The moving party always bears the initial burden of showing
that no genuine issue of material fact exists, regardless of
which party ultimately has the burden of persuasion at trial.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where, as in
the present case, the Plaintiff's motion for summary judgment is
unopposed, the Court nonetheless has the duty to ascertain
whether the movant's evidence is sufficiently probative and
consistent to form the basis of a reasonable factfinder entering
a verdict in Plaintiff's favor under the applicable principles of
law.

　　　B. Rescission of an Insurance Policy

　　　Plaintiff seeks the rescission of the insurance policy it
issued to PCM.  Plaintiff argues that PCM has knowingly
misrepresented information on its insurance application.
(Plaintiff's Motion at ¶ 10).  Specifically, the Plaintiff claims
that Defendant failed to reveal in the Application the existence

of cease and desist orders issued by the insurance departments of several states against PCM and/or ABS[3] and/or their agents and principals.

The proposed "insureds" under the policy included Privilege Care Marketing, Inc. (the named insured), and included "any partner, director, officer or employee thereof while acting within the scope of his duties as such..." <u>See</u> Policy, Part E(b)(a) at page 11 (Ex. A to Compl.). Each of the named individual Defendants is a principal of PCM. (Compl. ¶¶ 6-11).

On October 17, 2001, the Colorado Division of Insurance issued a cease and desist order against Smith and Doyle, ordering them to stop selling unauthorized insurance products in Colorado.[4] (Pl. Motion, Ex. I). Under Colorado insurance law,

---

[3] Prior to becoming President of PCM in 2002, Doyle was one of the three principals in American Benefit Society ("ABS"). (Plaintiff's Motion at ¶ 3). Ashiotis, another one of the initial defendants in this case, was the President and principal at ABS. (<u>Id.</u>). ABS, just like PCM, was in the business of promoting the sale of employee benefit plans to small employers. ABS is allegedly out of business and has or is being investigated in several states for the sale of unauthorized insurance relating to health and benefit plans. (Plaintiff's Motion at ¶ 5). A cease and desist order had been entered by the Washington Office of Insurance Commissioner on December 17, 2001 against ABS and its officers, directors, agents, and affiliates, including Doyle and Ashiotis. (Plaintiff's Motion, Ex. K). Another cease and desist order had been entered by the Colorado Commissioner of Insurance on October 17, 2001 against Doyle and Smith. (Plaintiff's Motion, Exhibit I).

[4] The news release regarding unauthorized insurance entities in Colorado, that mentions Smith and Doyle, which was offered by the Plaintiff as evidence of Defendant's state of mind, was issued on May 30, 2002, and covered orders issued from May 23,

licensed agents who sell illegal products are subject to
disciplinary action including revocation of their license and
could face criminal charges and be liable for payment of claims.
Id.  Next, on December 17, 2001, the Washington Office of
Insurance Commissioner issued a cease and desist order against
ABS and its officers, directors, agents and affiliates, including
Doyle and Ashiotis.  The order prohibited ABS and its
representatives from doing business in Washington. (Pl. Motion,
Ex. K).

Furthermore, on January 30, 2002, the Oklahoma Insurance
Commissioner had also issued a cease and desist order against PCM
and Smith, prohibiting them from doing business in Oklahoma. (Pl.
Motion, Ex. J).

The Plaintiff also claims that at the time the application
was completed, a civil complaint was already filed against
Ashiotis, a proposed insured under the policy PCM applied for, in
2001 in the Superior Court, Camden County, New Jersey. (Compl. at
¶ 29).

---

2001 until May 23, 2002.  The Court accepts as true the
Plaintiff's assertion that the cease and desist order was issued
on October 17, 2001.  (See Plaintiff's Motion, Ex. I).

When PCM applied for liability insurance with the Plaintiff, Doyle, as the President of PCM, had to answer the following questions:

> 21. Does any person to be insured have knowledge or information of any act, error, or omission which might reasonably be expected to give rise to a claim against him/her?
> 22. After inquiry, have any claims have been made against any proposed insured(s) during the past five (5) years?

(Pl. Motion Ex. H).

Doyle answered both these questions in the negative. (Compl. Ex. A). Plaintiff alleges that PCM's representations on the insurance application constituted legal fraud and equitable fraud, as now discussed.

C. Legal Fraud

Under New Jersey law, fraud as basis for rescinding a contract is divided into two categories: legal fraud and equitable fraud. Liebling v. Garden State Indem., 767 A.2d 515, 518 (N.J. Super. Ct. App. Div. 2001). The Plaintiff claims rescission under both theories. We will first analyze the legal fraud claim and than the equitable fraud one.

The New Jersey Supreme Court held that in order for an insurer to rescind an insurance policy under a legal fraud theory, the insurer has to prove that the insured's application for the insurance policy contained misrepresentations which were knowing and material and made with the intention that the other

8

party rely on them, resulting in reliance by that party to its detriment. <u>Bonnco Petrol, Inc., v. Epstein</u>, 560 A.2d 655, 660 (N.J. Sup. Ct. 1989).

### 1. <u>PCM Made a Knowing Misrepresentation</u>

The principal issue in this motion is whether the issuance of a cease and desist order by a state insurance department constitutes a "claim" or an "act, error or omission which might reasonably be expected to give rise to a claim" against the insured.

The Insurance Policy defines a "Claim" to mean:

> 1) A demand in which damages are alleged; or
> 2) A Wrongful Act that has happened that is likely to result in a demand for damages being made against an Insured.
> Claim includes:
> 1) Cross claims lawsuits screening panel proceedings;
> 2) An arbitration proceeding in which damages are alleged and to which an Insured submits or does submit with our consent; or
> 3) Any other alternative dispute resolution proceeding in which Damages are alleged and to which an Insured submits with our consent.

(Compl., Ex. A)

Plaintiff has produced evidence showing that Defendant answered Question 22 untruthfully as to a 2001 claim against Ashiotis.  Plaintiff tries to equate cease and desist orders with "claims."  This Court however does not accept that a "claim"

under the policy includes a cease and desist order.  Plaintiff did not prove that there were any claims against Defendant PCM at the time Doyle signed the Application.  Also, there is no proof that any monetary claims against the insured PCM or the individual insureds were made in the five years prior to the Application, other than the claim in Superior Court of New Jersey against Ashiotis, above.  The claim against Ashiotis, however, should have been disclosed and it was not.  The answer to Question 22, therefore, was incorrect.

Next, the Court will analyze Question 21 of the Application, and Doyle's answer to it.  Question 21 prompted Doyle to answer whether he was aware of any "acts, errors or omission which might reasonably be expected to give rise to a claim" against the insured.  Doyle answered the question in the negative.  However, Doyle was presumably aware that PCM was prohibited from selling insurance in Oklahoma, for failure to obtain a license.  It appears that before the issuance of the Oklahoma cease and desist order, PCM had already illegally sold insurance to individuals. (Plaintiff's Motion, Ex. J).  The Oklahoma Insurance Commissioner also emphasized that "although Privilege Care marketed itself as a professional employee organization, its agents often presented the plan as insurance, and only later informed employers of the full details." (Plaintiff's Motion, Ex. J).  It is clear that this type of act qualifies as "act(s), error(s) or omission(s)

which might reasonably be expected to give rise to a claim."
Likewise, by February 2002, when the application for this policy
was signed, several of the principals, who were to be insureds
under the policy, were already the subject of cease and desist
orders from allegedly illegal insurance selling practices in this
same field in Colorado (Doyle and Smith), Oklahoma (Smith), and
Washington (Doyle and Ashiotis).  This information should have
been disclosed in a truthful answer to Question 21, because the
State regulators were indeed alleging misconduct by these
individuals which "might reasonably be expected to give rise to a
claim" against them.  It would be no defense to say that conduct
by those same individuals, operating under a different corporate
entity, was not called for in Question 21; that question was
focused on conduct that could give rise to claims against any of
the individuals proposed as insureds, and was not limited to such
conduct under the PCM rubric.  Such an inquiry was germane to the
character of the proposed insureds, whether or not PCM might also
ultimately be held liable.

     This case is similar to the situation in <u>Esoldi v. Esoldi</u>,
930 F.Supp. 1015 (D.N.J. 1996).  In that case, the New Jersey
District Court concluded that the insured, a law firm, materially
misrepresented information on his application for insurance when
he responded in the negative to the following question:

> Is the firm aware of any circumstances, or any
> allegations or contentions as to any incident which may
> result in any claim being made against the firm or any
> of its past or present Owners, Partners, Shareholders,
> Corporate Officers or Employees or its predecessors in
> business?

Id. at 1022.  The court concluded that the insured's mere
knowledge of the questionably illegal or unethical business
conduct of several of the insured's partners was sufficient to
place the insured on notice of potential claims against them, and
to obligate the insured to answer the question in the
affirmative, notwithstanding the lack of any manifested intent of
any third parties to file a claim against the insured. See Booker
v. Blackburn, 942 F.Supp. 1005, 1010 (D.N.J. 1996) (citing Esoldi
v. Esoldi, 930 F.Supp. 1019-21).

This Court therefore concludes that the Defendant PCM
knowingly misrepresented the truth in its application to obtain
liability insurance from TIG.  Next, the Plaintiff has to
demonstrate that the misrepresentation was material.

2. Defendants' Misrepresentations Were Material

A misrepresentation is material if it "naturally and
reasonably influenced the judgment of the underwriter in making
the contract at all, or in estimating the degree or character of
the risk, or in fixing the rate of premium." Massachusetts Mut.
Life Ins. Co. v. Manzo, 584 A.2d 190, 196 (N.J. Sup. Ct. 1991)

(citing Kerpchak v. John Hancock Mut. Ins. Co., 117 A. 836 (N.J. Sup. Ct. 1922)); Formosa v. Equitable Life Assurance Soc'y, 398 A.2d 1301 (N.J. Super. Ct. App. Div. 1979)(holding that misrepresentation of application materially affected the issuance of insurance policy where insurer medical director stated that the insurer would not have issued the policy had it known of applicant's true medical history.)

In Manzo, the New Jersey Supreme Court held that the insurer is entitled to rescind the policy when the insured misrepresented his medical history on the application. Massachusetts Mut. Life Ins. Co. v. Manzo, 584 A.2d at 196.  In order for a misrepresentation to be material and justify rescission, it is not necessary for that misrepresentation to render the claim uninsurable. Id. at 196 (concluding that had the insurer, Mass. Mutual, had an idea about the facts, it would have inquired more and issued a policy at a premium two and one half times the standard rate that the insured was charged.)

In the present case it is obvious that had the Plaintiff known about the Oklahoma order and the potential claims deriving from PCM's way of doing business, as well as the numerous regulatory orders entered against the individual proposed insureds, it would have either refused to insure PCM or would have realized the increased risk involved and offered the

13

insurance for higher premiums.  In other words, PCM's misrepresentations on the application were material.

> 3. <u>The Defendants Intended for the Plaintiff to Rely on</u>
> <u>Their Misrepresentations</u>

Doyle, the PCM President, signed the Application stating:

> I HEREBY DECLARE that, after inquiry, the above
> statements and particulars are true and I have not
> suppressed or misstated any material facts and that I
> agree that this application shall be the basis of the
> contract with the Underwriters.
> This application along with all the attachments shall
> become part of the policy

(Plaintiff's Motion, Ex. H).

It is thus clear that PCM was fully aware that the answers it provided in the Application would be relied upon by the Plaintiff.  It is also clear that Defendant intended for TIG to rely on the said answers.

> 4. <u>Plaintiff Relied on the Misrepresentations</u>

The TIG policy states that:

> By accepting this policy you agree that:
>
> a.   The statements on the declaration page are true
>      and complete;
> b.   Those statements are based on representations and
>      warranties you made to us in the application
>      (including any renewal application and any
>      attachments or information submitted to modify
>      this policy), and are the basis of this policy.
>      The application is considered to be incorporated
>      into and constitutes a part of this policy.
> c.   We have relied on your representations and
>      warranties in issuing and modifying this policy.

(Compl., Ex. A.)

Therefore, it is clear that Plaintiff relied on the Defendant's misrepresentations when issuing the insurance policy.

Since Plaintiff has demonstrated that all the elements of legal fraud are present, the Court shall rescind the TIG insurance policy issued to PCM.  We will next analyze the claim for rescission under the equitable fraud theory.

        D. Equitable Fraud

Equitable fraud is the second theory under which the Plaintiff is trying to rescind the insurance policy.  The New Jersey law provides that "a misrepresentation by the insured, whether contained in the policy itself or in the application for insurance, will support a forfeiture of the insured's rights under the policy if it is untruthful, material to the particular risk assumed by the insurer, and reasonably relied upon by the insurer issuing the policy. FDIC v Moskowitz, 946 F.Supp. 322, 329 (D.N.J. 1996), (citing Williams v. American Home Assurance Co., 297 A.2d 193 (N.J. Super. Ct. App. Div. 1972)).

New Jersey statutory law authorizes an insurer to deny recovery for misrepresentations made on an application for insurance if such misrepresentations "materially affected either the acceptance of the risk or the hazard assumed by the insurer." N.J.S.A. § 17B:24-3(d) (1985).  The Supreme Court of New Jersey interpreted this provision to imply that "even an innocent

15

misrepresentation can constitute equitable fraud justifying rescission." <u>Ledley v. William Penn Life Ins. Co.</u>, 651 A.2d 92, 95 (N.J. Sup. Ct. 1995) (citing <u>Metropolitan Life Ins. Co. v. Tarnowski</u>, 20 A.2d 421, 423 (N.J. 1941)).  Therefore, "to rescind a policy, an insurer need not show that the insured actually intended to deceive." <u>Id.</u> (citing <u>Massachusetts Mut. Life Ins. Co. v. Manzo</u>, 584 A.2d 190, 194 (N.J. Sup. Ct. 1991)).

The New Jersey Supreme Court explained the distinction between legal and equitable fraud in <u>Bonnco Petrol, Inc. v. Epstein</u>,:

> A misrepresentation amounting to legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment.  The elements of scienter, that is, knowledge of the falsity and an intention to obtain an undue advantage therefrom, are not essential if plaintiff seeks to prove that a misrepresentation constituted only equitable fraud. Thus "whatever would be fraudulent at law will be so in equity; but the equitable doctrine goes farther and includes instances of fraudulent misrepresentations which do not exist in the law."

<u>Bonnco Petrol, Inc., v. Epstein</u>, 560 A.2d 660 (quoting 3 J. Pomeroy, A Treatise on Equity Jurisprudence 421 (5th ed. 1941) (citations omitted))

Equitable fraud distinguishes between objective and subjective questions on the application.  Objective questions are

16

concerned with information within the applicant's knowledge "such
as whether the applicant has been examined or treated by a
physician." Formosa v. Equitable Life Assurance Soc'y, 398 A.2d
1301, 1304 (N.J. Super. Ct. App. Div. 1979).  Subjective
questions on the other hand, are concerned with more ambiguous
issues such as the state of the applicant's health, seeking to
establish the applicant's state of mind. FDIC v. Moskowitz, 946
F.Supp. at 329.  Courts have been more lenient when reviewing an
applicant's misrepresentation made in response to a subjective
question than to an objective question.  The rationale behind the
distinction between objective and subjective questions is that
the answer to a subjective question will not constitute equitable
fraud if "the question is directed toward probing the knowledge
of the applicant and determining the state of his mind and . . .
the answer is a correct statement of the applicant's knowledge
and belief . . . ." Liebling v. Garden State Indem., 767 A.2d at
519 (citing Ettelson v. Metropolitan Life Ins. Co., 164 F.2d 660,
665 (3rd Cir. 1947)).  The answer to a subjective question
constitutes equitable fraud only if the insurer demonstrates not
only that the answer was false, but also that the insured knew
that it was false. Liebling v. Garden State Indem., 767 A.2d at
519 (citing Fidelity and Deposit Co. of Maryland v. Hudson United
Bank, 653 F.2d 766, 773 (3rd Cir. 1981)).

17

We have already analyzed the Plaintiff's claim under the legal fraud theory.  Moreover, "whatever would be fraudulent at law will be so in equity; but the equitable doctrine goes farther and includes instances of fraudulent misrepresentations which do not exist in the law." See Bonnco above.  Specifically, under the equitable fraud doctrine, the Plaintiff does not have to show knowledge of the falsity (knowledge necessary only when dealing with subjective questions), or an intention to obtain an undue advantage therefrom.  Therefore, we will only analyze the elements of the claim which are distinct from the legal fraud theory analysis.

Plaintiff argues that Question 22 of the Application is an objective question and therefore Plaintiff does not need to prove the insured's state of mind. (Plaintiff's Motion at ¶ 13).  Nevertheless, the Plaintiff still has to establish that the insured's answer was a misrepresentation.  However, as discussed above, Plaintiff fails to prove that any actual claims had been made against PCM or the other proposed insureds the Application was signed, other than the claim against Ashiotis in Superior Court, above.

Question 21 on the Application is a subjective question.  Furthermore, PCM's answer is also knowingly false, in many material ways, as discussed above, representing equitable fraud.  See discussion above regarding PCM's knowledge.

18

The other characteristics of the equitable fraud, material misrepresentation made with the intention that the other party rely thereon, and the detrimental reliance, were discussed above in the section pertaining to legal fraud and that discussion is also relevant to the present section.  Plaintiff has thus adduced sufficient evidence of each element of equitable fraud and is entitled to rescission of the policy on this alternate ground

In conclusion, the TIG policy can be rescinded under either a legal, or equitable fraud theory.

<u>**CONCLUSION**</u>

For the reasons expressed in this Opinion, Plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. 56 will be granted, declaring that policy number MPL 39244585 issued to Privilege Care Marketing Group, Inc. effective February 6, 2002 to February 6, 2003, is rescinded due to fraud in the application.  The accompanying Judgment will be entered.

**4/27/05**                                  **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             United States District Judge

19